**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

MATTHEW CHAMLIN, individually and on
behalf of all others similarly situated,

                Plaintiff,

     v.

JOHNSON & JOHNSON and McNEIL
NUTRITIONALS, LLC,

                Defendant.

Case No. 1:19-cv-03852

**DEFENDANTS JOHNSON & JOHNSON AND McNEIL NUTRITIONALS, LLC'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Dated: September 24, 2019

**O'MELVENY & MYERS LLP**

Hannah Y. Chanoine
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
hchanoine@omm.com

Richard B. Goetz (*Pro Hac Vice* pending)
Carlos M. Lazatin (*Pro Hac Vice* pending)
400 South Hope Street
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
rgoetz@omm.com
clazatin@omm.com

*Counsel for Defendants Johnson & Johnson and
McNeil Nutritionals, LLC*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 2

    A.    Plaintiff's Allegations ............................................................................... 2

    B.    Procedural History ..................................................................................... 4

III.  LEGAL STANDARD ......................................................................................... 7

IV.   ARGUMENT ...................................................................................................... 8

    A.    Plaintiff's Class Claims Are Barred by *China Agritech* ......................... 9

        1.    *China Agritech* applies to Plaintiff's state-law claims ............................. 9

        2.    Under *China Agritech*, Plaintiff's class claims are not subject to tolling and must be stricken or dismissed ................................................. 10

    B.    Cross-jurisdictional Tolling Does Not Apply Here ............................................. 13

    C.    Plaintiff's Individual Claims Are Ineligible for Equitable Tolling ...................... 14

V.    CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Crystal City Mariott Hotel*,
   2004 WL 744489 (S.D.N.Y. Apr. 6, 2004) ............................................................. 8

*Addelson v. Commonwealth Limousine Serv., Inc.*,
   2018 WL 6728396 (Mass. Super. Ct. Nov. 7, 2018) ................................................ 12

*Am. Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974) .............................................................................................. 9, 16

*Armendariz v. Sante Fe Cty. Bd. of Comm'rs*,
   331 F. Supp. 3d 1245 (D.N.M. 2018) ...................................................................... 12

*Armutcuogli v. Lev*,
   2018 WL 1474386 (S.D.N.Y. Mar. 23, 2018) .......................................................... 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................. 7

*Blutreich v. N. Shore-Long Island Jewish Health Sys., Inc.*,
   2015 WL 1515255 (S.D.N.Y. Apr. 2, 2015). ............................................................ 8

*Bowling v. Johnson & Johnson et al.*,
   No. 1:17-cv-03982-AJN (S.D.N.Y. Sept. 19, 2018)................................................. 4

*Byrd v. City of New York*,
   2005 WL 1349876 (2d Cir. June 8, 2005) ............................................................... 4

*Casey v. Merck & Co.*,
   653 F.3d 95 (2d Cir. 2011) ...................................................................................... 9

*Chavez v. Occidental Chem. Corp.*,
   No. 18-1120-cv (2d Cir. Aug. 7, 2018) ................................................................... 13

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018)................................................................... 9, 10, 11, 15

*Crown, Cork & Seal Co. v. Parker*,
   462 U.S. 345 (1983)................................................................................................. 10

*Cullen v. Margiotta*, 811 F.2d 698 (2d Cir. 1987), *cert denied, Nassau Cty. Republican Comm. v.*
   *Cullen*, 483 U.S. 1021 (1987), *overruled on other grounds by Agency Holding Corp. v.*
   *Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987) ................................................. 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010) ................................................................ 8

*Famular v. Whirlpool Corp.*,
   2017 WL 2470844 (S.D.N.Y. June 7, 2017) ...................................... 12

*Fierro v. Landry's Restaurant*,
   32 Cal. App. 5th 276 (Cal. Ct. App. 2019) ...................................... 12

*Hart v. BHH, LLC*,
   2018 WL 5729294 (S.D.N.Y. Nov. 2, 2018) .................................... 13

*Henkel v. Wagner*,
   2013 WL 12084503 (S.D.N.Y. Mar. 18, 2013) .................................. 4

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
   995 F. Supp. 2d 291 (S.D.N.Y. 2014), *aff'd on other grounds sub nom. SRM Glob. Master*
   *Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173 (2d Cir. 2016) ......................... 13

*In re Scotts EZ Seed Litig.*,
   2017 WL 3396433 (S.D.N.Y. Aug. 8, 2017) .................................... 15

*In re Townsend*,
   726 F. App'x 91 (2d Cir. 2018) ........................................................ 4

*Kramer v. Time Warner Inc.*,
   937 F.2d 767 (2d Cir. 1991) ............................................................ 4

*Martin Hilti Family Tr. v. Knoedler Gallery, LLC*,
   137 F. Supp. 3d 430 (S.D.N.Y. 2015) .............................................. 8

*Martinelli v. Johnson & Johnson, et al.*,
   No. 2:15-cv-01733-JAM-DAD (E.D. Cal. Oct. 16, 2015) ................ 5

*Matana v. Merkin*,
   957 F. Supp. 2d 473 (S.D.N.Y. 2013) ............................................ 10

*Nghiem v. U.S. Dep't of Veterans Affairs*,
   451 F. Supp. 2d 599 (S.D.N.Y. 2006), *aff'd*, 323 F. App'x 16 (2d Cir. 2009) .......................... 8

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Forest Pharms., Inc.*,
   915 F.3d 1 (1st Cir. 2019) ................................................................ 12

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Reid v. Johnson & Johnson et al.*,
No. 3:11-cv-01310-L-BLM (S.D. Cal.) .................................................................. 4

*Reid V. Johnson & Johnson*,
780 F.3d 952 (9th Cir. 2015) ................................................................................ 4

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ............................................................................................ 16

*Steiner v. Anbrook Indus., Ltd.*,
2018 WL 1664978 (S.D.N.Y. Apr. 4, 2018) ......................................................... 8

*Szymczak v. Nissan N. Am. Inc.*,
2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ....................................................... 8

*Torres v. Wells Fargo Bank*,
2018 WL 6137126 (C.D. Cal. Aug. 28, 2018) ..................................................... 12

*Vincent v. Money Store*,
915 F. Supp. 2d 569 (S.D.N.Y. 2013) .................................................................. 14

*Wade v. Danek Med., Inc.*,
182 F.3d 281 (4th Cir. 1999) ............................................................................... 14

*Weitzner v. Sanofi Pasteur Inc.*,
909 F.3d 604 (3d Cir. 2018) ................................................................................ 15

*Young v. Johnson & Johnson et al.*,
No 3:11-cv-4580-JAP-LHG (D.N.J.) ..................................................................... 4

*Young v. Johnson & Johnson*,
2012 U.S. Dist. LEXIS 55192 (Apr. 19, 2012) ..................................................... 4

*Young v. Johnson & Johnson*,
525 Fed. App'x 179 (3d Cir. 2013) ....................................................................... 4

**Other Authorities**

Raisio, *Chief Executive's Review for 2014*
(Feb. 12, 2015) (last visited Sept. 19, 2019), https://www.raisio.com/en/chief-executive-s-review-for-2014 ................................................................................... 17

**Rules**

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Fed. R. Civ. P. 12(b)(6)..................................................................................................7

**Regulations**

21 C.F.R. § 101.13(b)(4)................................................................................................3

21 C.F.R. § 101.13(i).....................................................................................................3

21 C.F.R. § 101.9(c)......................................................................................................3

21 C.F.R. § 101.9(c)(2)(ii)............................................................................................3

<u>**MEMORANDUM OF LAW**</u>

I.    <u>**INTRODUCTION**</u>

This is Plaintiff's counsel's third attempt to cash in on an expansive interpretation of the availability of statutory damages under New York's General Business Law ("GBL"). First, a California court denied as untimely their attempt to add Suzanna Bowling to a putative class action making essentially the same allegations as this one: that Defendants Johnson & Johnson and McNeil Nutritionals LLC (collectively, "McNeil") fraudulently misrepresented the trans fat content of Benecol spreads. Second, ***this Court*** denied their request to substitute a new named plaintiff after it found Bowling to be an inadequate class representative and on that ground denied her motion for class certification. Now, Chamlin has filed suit as a new Plaintiff with a nearly identical complaint, hoping to salvage his counsel's efforts at obtaining statutory damages under the GBL that would exceed the retail price of Benecol by over a hundred times for each of thousands of putative class members.

Putting aside the weak merits of Plaintiff's claims, he and his counsel have run out of time. Plaintiff alleges he bought Benecol in November 2011. He did not file suit until ***more than seven years later*** in April 2019. The statutes of limitations on Chamlin's claims range from three to six years. Thus, every one of his claims is time-barred.

Plaintiff, no doubt, is counting on this Court to apply equitable tolling to his claims under *American Pipe*, which may toll the statute of limitations of a plaintiff's claims during the pendency of a class action lawsuit. Here, three prior class actions had been filed related to the "No Trans Fat" claims on Benecol labels before Plaintiff got around to filing suit. But class-action tolling under *American Pipe* does not apply here:

***First***, under the Supreme Court's decision in *China Agritech*, class-action tolling applies only to a plaintiff's *individual* claims. That is, even if *American Pipe* tolling applied, it would not

1

permit Chamlin to bring *class* claims that are time-barred. This Court must look to federal precedents even in deciding tolling under New York law, and *China Agritech* commands that Chamlin's class claims be dismissed or stricken from his complaint.

**Second**, this Court should not toll the statute of limitations on Chamlin's claims on the basis of out-of-jurisdiction cases filed years ago in California. This Circuit has recognized a presumption against cross-jurisdictional tolling in the absence of clear authority from the forum state permitting such tolling. No clear New York authority exists on this issue, so this Court should not apply cross-jurisdictional tolling.

**Third**, *American Pipe* tolling is an equitable doctrine grounded in principles of fairness. Those principles militate against tolling Plaintiff's claims here, *including his individual claims*. Plaintiff sat on his rights for the better part of a decade. Moreover, the application of tolling here would frustrate New York substantive law that prohibits statutory damages in a class action—the main object of Plaintiff's lawsuit here.

For these reasons, this Court should dismiss Plaintiff's complaint in its entirety, with prejudice, or at minimum, should strike all class allegations from the complaint.

## II.    <u>BACKGROUND</u>

### A.    <u>Plaintiff's Allegations</u>

Benecol is a vegetable-oil based spread that has helped tens of thousands of Americans significantly lower their cholesterol. Unlike other butter or margarine substitutes, Benecol is clinically "Proven to Reduce Cholesterol." *See* Compl. ¶ 14. Plaintiff alleges he is a resident of New York, and that "in or about November 2011," he bought both Benecol Regular and Benecol Lite at a D'Agostino store in New York City. *Id.* ¶ 5. He claims he "reviewed the products' labeling and packaging," including statements that read "No Trans Fats" and "No Trans Fatty Acids." *Id.* Plaintiff alleges "this is false because each variety of Benecol spreads contain

2

partially hydrogenated oils, which always contains trans fat." *Id.* ¶ 13. For this reason, Plaintiff

suggests that Benecol is not "safe for human consumption." *Id.* ¶ 5.

Generally under FDA regulations, manufacturers are permitted to place "nutrient content

claims" on food labels if they are consistent with applicable food labeling regulations. *See* 21

C.F.R. § 101.13(i). Food labeling statements may use "[r]easonable variations in the spelling of

terms … and their synonyms." *Id.* § 101.13(b)(4). FDA regulations require that labels include a

"Nutrition Facts" box that discloses information about particular nutrients in the food. *Id.*

§ 101.9(c). These regulations specifically require that "[i]f the serving contains less than 0.5

gram [of trans fat], ***the content … shall be expressed as zero.***" *Id.* § 101.9(c)(2)(ii) (emphasis

added).[1] In other words, FDA views such amounts as so negligible that it would be *confusing* to

consumers to describe the amount of trans fat as anything other than *zero* on the Nutrition Facts

panel. The FDA's concern is especially justified in the case of Benecol, where there would be

potential public health risks in discouraging use of a product with proven cholesterol-lowering

benefits.

It was in this regulatory context that McNeil released the labels that are the subject of this

dispute, which were on Benecol packages in the putative class period of 2008–2011. As required

by federal regulations, the Nutrition Facts Panel on each Benecol tub stated that Benecol

contained "0g" trans fat per serving. *See* Compl. ¶ 15. Elsewhere on the label, the packaging

expressed the equivalent statements "No Trans Fat" and "No Trans Fatty Acids." *Id.* ¶¶ 14–15.

In September 2011, McNeil changed Benecol's label to remove the "No Trans Fats" and "No

---

[1] McNeil does not argue in this Motion that these FDA regulations preempt Plaintiff's claim of
deception here. Regardless of whether preemption applies, this regulatory context will ultimately
bear on the reasonableness of McNeil's decisions and whether reasonable consumers were
actually deceived.

Trans Fatty Acids" claims, leaving only the "0g" trans-fat claim in the Nutrition Facts.[2]

### B.   Procedural History

In June 2011, Robert Reid filed a class action complaint against Defendants in the Southern District of California, alleging Benecol's "No Trans Fat" claim was misleading because the product contained a small amount of trans fat (less than 0.5g per serving). *Reid v. Johnson & Johnson et al.*, No. 3:11-cv-01310-L-BLM (S.D. Cal.). The district court granted McNeil's motion to dismiss, and Reid appealed to the Ninth Circuit. *Reid V. Johnson & Johnson*, 780 F.3d 952, 955 (9th Cir. 2015). The Ninth Circuit reversed and remanded, and the case settled in June 2015.

Shortly after Reid was filed, Thomas Young filed a putative class action against Defendants in the District of New Jersey, stating substantially the same allegations. *Young v. Johnson & Johnson et al.*, No 3:11-cv-4580-JAP-LHG (D.N.J.). The district court granted McNeil's motion to dismiss, and the Third Circuit affirmed. *See Young v. Johnson & Johnson*, 2012 U.S. Dist. LEXIS 55192 (Apr. 19, 2012), *aff'd, Young v. Johnson & Johnson*, 525 Fed. App'x 179 (3d Cir. 2013).

Martinelli, Bowling, and Chamlin are each represented by the same law firm—Bursor &

---

[2] Decl. of Elizabeth Steele, *Bowling v. Johnson & Johnson et al.*, No. 1:17-cv-03982-AJN (S.D.N.Y. Sept. 19, 2018)("*Bowling*") ECF No. 60 ¶ 20 ("In September 2011, McNeil changed the labeling on Benecol to remove the 'No Trans Fat' and 'No Trans Fatty Acids' claims."). The Court may consider and take judicial notice of the filings from the related cases because they are matters of public record that McNeil cites to establish the fact of their filings and dispositions by the respective courts.  See *Henkel v. Wagner*, 2013 WL 12084503, at *1 (S.D.N.Y. Mar. 18, 2013) (Nathan, J.) (citing *Byrd v. City of New York*, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005)) ("Matters of public record, including court filings, are subject to judicial notice."); *In re Townsend*, 726 F. App'x 91, 91 (2d Cir. 2018) (quoting *Kramer v. Time Warner Inc*., 937 F.2d 767, 774 (2d Cir. 1991)) ("[C]ourts routinely take judicial notice of documents filed in other courts … not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

Fisher, P.A. After *Reid* settled, Bursor & Fisher set out to find plaintiffs and file copycat lawsuits on behalf of each of them.

In August 2015, Martinelli filed a copycat lawsuit in the Eastern District of California, stating virtually the same claims[3] as Reid based on the same "No Trans Fat" claim on Benecol's packaging.[4] Over a year later, in September 2016, Bowling attempted to join the *Martinelli* lawsuit as an additional named plaintiff.[5] The court denied that motion on the ground that Bowling was "not diligent" in moving to join the lawsuit.[6] At the same time, the court denied certification of Martinelli's proposed nationwide class.[7] Martinelli later filed a renewed motion to certify two classes: (i) a class on behalf of all persons who purchased Benecol in California between January 1, 2008 and December 13, 2011; and (ii) a class on behalf of all persons who purchased Benecol during the same time period in "California, Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia and West Virginia."[8] Martinelli submitted expert testimony that purported to estimate the classes' damages at about $2.8 million, total, for all of Martinelli's ten proposed subclasses.[9]

---

[3] *Martinelli* alleged eight causes of action: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) unjust enrichment; (4) violation of California's Consumers Legal Remedies Act; (5) violation of California's Unfair Competition Law; (6) violation of California's False Advertising Law; (7) negligent misrepresentation; and (8) fraud. *See* First Am. Class Action Compl., *Martinelli v. Johnson & Johnson et al.*, No. 2:15-cv-01733-JAM-DAD (E.D. Cal. Oct. 16, 2015)("*Martinelli*") ECF No. 9.

[4] *See id.*

[5] *See* Pl.'s Notice of Mot. & Mot. for Leave to File Second Am. Class Action Compl., *Martinelli* ECF No. 46.

[6] Mem. & Order, *Martinelli* ECF No. 78 at 6–7.

[7] *Id.* at 11.

[8] Pl.'s Renewed Notice of Mot. & Mot. for Class Cert., *Martinelli* ECF No. 171 at 1.

[9] Decl. of Colin B. Weir, *Martinelli* ECF No. 80-2.

Two days after the *Martinelli* court rejected her attempted joinder in September 2016, Bowling filed her own copycat lawsuit in the Southern District of New York.[10] In a complaint that tracked Martinelli's complaint virtually verbatim, Bowling stated substantially similar claims based on the same allegations that Benecol's "No Trans Fat" statements were false and misleading.[11] Bowling sought $550 in statutory damages for each of the more than 600,000 units of Benecol sold in New York—amounting to ***several hundred million dollars*** for the putative class.[12] She moved to certify both a nationwide class of "All persons who purchased Benecol Regular Spread or Benecol Light Spread from January 1, 2008 to December 31, 2011 in the United States" and a New York class of individuals who bought the same products in the same time period.[13] After McNeil filed its opposition, Bowling withdrew her request for nationwide class certification and narrowed her motion to a New York-only class.

After the close of briefing on Martinelli's motion for class certification but before the start of briefing on Bowling's motion for class certification, McNeil changed its counsel on both cases. Although the record was set for *Martinelli*, McNeil developed a different record on the *Bowling* case. Thus, the *Martinelli* court and the *Bowling* court considered the merits of the respective motions for class certification based on different records.

---

[10] Class Action Compl., *Bowling* ECF No. 1 (filed May 25, 2017). McNeil did not move to dismiss Bowling's claims on the basis of the statute of limitations, and the issue of tolling was never raised or ruled upon in the *Bowling* action. Mem. Op. & Order, *Bowling* ECF No. 26 and Op. & Order, *Bowling* ECF No. 117.

[11] Bowling alleged seven causes of action: (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) unjust enrichment; (4) violation of New York's General Business Law § 349; (5) violation of New York's General Business Law § 350; (6) negligent misrepresentation; and (7) fraud. *See* Class Action Compl., *Bowling* ECF No. 1.

[12] Decl. of Colin B. Weir, *Bowling* ECF No. 121.

[13] Pl.'s Notice of Mot. & Mot. for Class Cert., Appointment of Class Representatives, & Appointment of Class Counsel, *Bowling* ECF No. 33 at 1.

On March 28, 2019, Judge England partially granted Martinelli's class certification motion. For non-California express warranty claims, Judge England limited the class period to a few months at the end of 2011.[14] On March 29, 2019, this Court denied Bowling's motion for class certification on the grounds of adequacy and typicality because Bowling was "subject to unique defenses that threatened to become the focus of the litigation."[15] Specifically, this Court pointed to the fact that (i) Bowling had previously signed a covenant not to sue Defendants for claims arising from labeling of a Listerine product; and (ii) Bowling faced "substantial credibility issues" because Defendants' unrebutted evidence showed that "Bowling could not have purchased Benecol Light in the manner in which she testified," and there was no record in Defendants' databases of Bowling's alleged complaint to customer service regarding Benecol.[16] Although Plaintiff sought leave in her reply brief to "substitute in a new lead Plaintiff if the Court finds her inadequate or atypical," the Court did not grant leave for her to do so.

In response, Plaintiff's counsel filed a separate lawsuit with a new plaintiff. One month after Bowling's motion for class certification was denied, Chamlin filed a complaint in the same district, alleging the same exact causes of action as Bowling.

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint where the plaintiff has "faile[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss, the Court must assume that well-pled factual allegations in the complaint are true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[14] Mem. & Order, *Martinelli* ECF No. 216.

[15] Order Denying Class Cert., *Bowling* ECF No. 117 at 8 (internal quotations omitted).

[16] *Id.* at 10–13.

"A motion to dismiss on statute of limitations grounds generally is treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6)[.]" *Nghiem v. U.S. Dep't of Veterans Affairs*, 451 F. Supp. 2d 599, 602–03 (S.D.N.Y. 2006), *aff'd*, 323 F. App'x 16 (2d Cir. 2009). Motions to dismiss on statute of limitations grounds are treated as other motions to dismiss; courts are to determine whether the complaint itself is legally sufficient" to survive the affirmative defense, "not to weigh the evidence that may be presented at a trial." *Adams v. Crystal City Mariott Hotel*, 2004 WL 744489, at *3 (S.D.N.Y. Apr. 6, 2004). In resolving a 12(b)(6) motion, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Blutreich v. N. Shore-Long Island Jewish Health Sys., Inc.*, 2015 WL 1515255, at *3 (S.D.N.Y. Apr. 2, 2015).

## IV.   <u>ARGUMENT</u>

McNeil removed the "No Trans Fat" label by September 2011. Under virtually every applicable statute of limitations, Plaintiff's claims expired long before he filed suit. Chamlin filed suit in April 2019, and alleges that he bought Benecol ***more than seven years*** earlier in November 2011. Plaintiff's Counts III (unjust enrichment), IV (GBL § 349), and V (GBL § 350) are subject to a three-year statute of limitations[17]; Counts I (express warranty) and II (implied warranty) are subject to a four-year statute of limitations[18]; and Counts VI (negligent misrepresentation) and VII (fraud) are subject to a six-year statute of limitations.[19]

---

[17] *See Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 466 (S.D.N.Y. 2015).

[18] *See Steiner v. Anbrook Indus., Ltd.*, 2018 WL 1664978, at *3 (S.D.N.Y. Apr. 4, 2018) (express warranty); *Szymczak v. Nissan N. Am. Inc.*, 2011 WL 7095432, at *11 (S.D.N.Y. Dec. 16, 2011) (implied warranty of merchantability).

[19] *See Armutcuogli v. Lev*, 2018 WL 1474386, at *5 (S.D.N.Y. Mar. 23, 2018) (Nathan, J.).

Thus, Plaintiff's claims have expired under all the applicable statutes of limitations unless he can demonstrate that a *successive chain* of putative class actions tolled his claims under *American Pipe & Construction Co. v. Utah,* 414 U.S. 538 (1974). "The Court held in *American Pipe* that the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint. Where class-action status has been denied, … 'a putative member of an uncertified class may … file an individual claim or move to intervene in the [existing] suit.'" *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018); *id.* at 544, 552–53.

A.   **Plaintiff's Class Claims Are Barred by *China Agritech***

The equitable tolling described in *American Pipe* does not permit litigants to take multiple bites at the class-certification apple. As the Supreme Court recently held in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018), Plaintiff cannot rely on a series of putative class actions to toll their *class* claims. To add another layer of certainty, it is not clear that a New York court would allow cross-jurisdictional tolling of the sort Plaintiffs propose here. And even without the holding of *China Agritech*, basic equitable principles militate against tolling even Plaintiff's individual claims.

1.   ***China Agritech* applies to Plaintiff's state-law claims**

Federal courts apply the tolling rules of the forum state in diversity cases. *Casey v. Merck & Co.*, 653 F.3d 95, 101–03 (2d Cir. 2011) ("[W]e now join the majority of our sister courts that have addressed the issue in holding that a federal court evaluating the timeliness of state law claims must look to the law of the relevant state to determine whether, and to what extent, the statute of limitations should be tolled by the filing of a putative class action in another jurisdiction."). Where state court decisions do not hold to the contrary, however, courts in this Circuit have long looked to federal case law interpreting *American Pipe* when sitting in diversity

and adjudicating New York state-law claims. *See, e.g.*, *Matana v. Merkin*, 957 F. Supp. 2d 473, 488 (S.D.N.Y. 2013) (Engelmayer, J.) (finding it "appropriate to apply federal case law interpreting the scope and application of *American Pipe* tolling" when addressing New York state claims); *see also Cullen v. Margiotta,* 811 F.2d 698, 719–21 (2d Cir. 1987) ("[T]he New York courts have … long embraced the principles of *American Pipe.*") (collecting cases), *cert denied*, *Nassau Cty. Republican Comm. v. Cullen*, 483 U.S. 1021 (1987), *overruled on other grounds by Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987)).

The Supreme Court's decision in *China Agritech* is the controlling federal precedent on how *American Pipe* tolling applies. There is no published New York state court decision interpreting *China Agritech* as it applies to state-law claims. This court should therefore apply *China Agritech* to Plaintiff's claims.

2.    **Under *China Agritech*, Plaintiff's class claims are not subject to tolling and must be stricken or dismissed**

In *China Agritech*, the Supreme Court found that under the principles of *American Pipe*, filing a putative class action tolls only *individual* claims, not putative class claims. 138 S. Ct. at 1804. The Court clarified that this tolling rule "is not dependent on intervening in or joining an existing suit; it applies as well to putative class members who, after denial of class certification, 'prefer to bring an individual suit rather than intervene … once the economies of a class action [are] no longer available.'" *Id.* (quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)). Thus, the *American Pipe* tolling rule applies only to unnamed members of a failed class who seek to join in the still-pending action or file individual claims. That is, even if Plaintiff's *individual* claims were tolled by *Reid*, *Martinelli*, or *Bowling*, none of his class claims were.

10

The Supreme Court's reasoning in *China Agritech* in deciding not to extend equitable tolling to class claims applies forcefully here. For one, the *China Agritech* Court found that under *American Pipe* principles, "additional *class* filings should be made early" to allow the district court to "select[] the best plaintiff with knowledge of the full array of potential class representatives." *See id.* at 1806–07. Had Chamlin come forward at the time *Reid* was filed—or even when *Martinelli* or *Bowling* was filed—the district courts could have determined the appropriate class representative years ago, entirely avoiding separate litigation.

Second, the Court reasoned that while plaintiffs pursuing individual claims reasonably rely on putative class representatives to represent their interests, "[a] would-be class representative" who waits until after the expiration of the statute of limitations does not. *Id.* at 1808. Here, the district court in *Martinelli* already found that (1) Bowling's much-earlier attempt to join the *Martinelli* case three full years ago was not diligent, albeit in the context of a motion to amend;[20] and (2) the district court in *Martinelli* denied Martinelli's arguments for certifying a nationwide class.[21] Chamlin's even more belated action is all the more unreasonable. Indeed, this Court already declined Bowling's request to substitute a new class representative; presumably, Chamlin is who Plaintiff's counsel had in mind.

Third, the Court noted that while tolling only individual claims provides a finite end to the limitations period, allowing successive class actions could permit "[e]ndless tolling" as failed class actions stack one on top of another. *Id.* at 1809. The Court addressed the third putative class action based on the same events, filed just three years after the initial class actions and one and a half years after the statute of limitations otherwise expired. The history of successive delay is far

---

[20] Mem. & Order Denying Nationwide Class, *Martinelli* ECF No. 78 at 11.

[21] *Id.*

more egregious here: *Martinelli* was the second class action in the related series, with *Reid* being

the first to be filed in 2011; *Martinelli* was filed in 2015, *Bowling* in 2017, and *Chamlin*, the

latest, was filed this year. *Chamlin* is the fourth federal class action based on the same events,

filed eight years after the initial claim and five years after the statute of limitations had otherwise

run. This is exactly the situation the *China Agritech* Court sought to avoid.

 A growing number of courts have applied the holding of *China Agritech* to state-law

class claims. For instance, the First Circuit Court of Appeals held in *Painters and Allied Trades

District Council 82 Health Care Fund v. Forest Pharmaceuticals, Inc.*, 915 F.3d 1 (1st Cir.

2019), that class claims—including claims brought under Minnesota state law—were not tolled

under *China Agritech* or *American Pipe* because "the tolling effect of a motion to certify applies

***only to individual claims***." *Id.* at 16–17 (emphasis added). And in *Torres v. Wells Fargo Bank*,

2018 WL 6137126 (C.D. Cal. Aug. 28, 2018), a district court in California held a class action

based on California state claims was not tolled by either (i) a prior class action where the claim

was dismissed because the class plaintiff was judicially estopped, or (ii) a prior class action that

settled before a ruling on class certification motion. *Id.* at *3–4; *see also, e.g.*, *Fierro v. Landry's

Restaurant*, 32 Cal. App. 5th 276, 289–97 (Cal. Ct. App. 2019) (extending *China Agritech* to

California state courts); *Armendariz v. Sante Fe Cty. Bd. of Comm'rs*, 331 F. Supp. 3d 1245,

1251–52 (D.N.M. 2018) (assuming state adopted *American Pipe* tolling, *China Agritech* would

bar class claims based on voluntarily-dismissed state court claims); *Addelson v. Commonwealth

Limousine Serv., Inc.*, 2018 WL 6728396, at *2 (Mass. Super. Ct. Nov. 7, 2018) (state-law class

claims were time-barred under *China Agritech*).[22]

---

[22] The few decisions that have declined to apply *China Agritech* are readily distinguishable. In *Famular v. Whirlpool Corp.*, 2017 WL 2470844 (S.D.N.Y. June 7, 2017), the court held *China Agritech* did not apply to New York state-law claims. *Id.* at *13. As discussed *supra* in Section 1,

The required result here could not be clearer: Plaintiff's attempt to string together *American Pipe* tolling from three other class actions is prohibited by the Supreme Court's holding in *China Agritech*. His class claims must be dismissed or stricken.

**B.    Cross-jurisdictional Tolling Does Not Apply Here**

Plaintiff's tolling theory doesn't just rely on a daisy chain of putative class actions—it relies critically on two lawsuits filed *outside this jurisdiction*: *Reid* and *Martinelli*, both filed in California. But courts in New York are split on whether to apply cross-jurisdictional tolling. Indeed, the Second Circuit heard argument on this issue in March of this year and in August certified the issue to the New York Court of Appeals.[23]

Various courts in the Second Circuit have held that absent a clear rule, "tolling can be applied only if it is clearly recognized by authoritative state court decisions," *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 312 (S.D.N.Y. 2014), *aff'd on other grounds sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173 (2d Cir. 2016). There are various reasons for this presumption against cross-jurisdictional tolling. One reason behind federal courts' reluctance to adopt cross-jurisdictional tolling on behalf of state courts is that "unless all states simultaneously adopt the rule of cross-jurisdictional class action tolling, any state which independently does so will invite into its courts a disproportionate share of suits which the federal courts have refused to certify as class actions after the statute of limitations has run." *In re Bear Stearns Cos.*, 995 F. Supp. 2d at 312 (quoting

---

that is incorrect. And in *Hart v. BHH, LLC*, 2018 WL 5729294, at *2 (S.D.N.Y. Nov. 2, 2018), the court held China Agritech applied only where the issue of class certification had been decided in the prior action. Putting aside whether that is correct, courts have *already twice denied* class certification of the putative classes of which Chamlin was a part, including the nationwide class in *Martinelli* and the New York class in *Bowling*.

[23] *See Chavez v. Occidental Chem. Corp.*, No. 18-1120-cv (2d Cir. Aug. 7, 2018) (ECF No. 79).

*Vincent v. Money Store*, 915 F. Supp. 2d 569–70 (S.D.N.Y. 2013) (Koetl, J.)) (applying California law). Further, conditioning New York's own tolling rules on the outcome of class certification in other states would move control of New York litigation away from New York and its legislature. *See Wade v. Danek Med., Inc.*, 182 F.3d 281, 288 (4th Cir. 1999) (adopting cross-jurisdictional tolling "would render the Virginia limitations period effectively dependent on the resolution of claims in other jurisdictions, with the length of the limitations period varying depending on the efficiency (or inefficiency) of courts in those jurisdictions").

There is no authoritative New York court decision on the issue of cross-jurisdictional tolling, so this Court should not presume that a New York court would consider out-of-state cases like *Reid* or *Martinelli* in applying *American Pipe* tolling. Thus, to the extent Plaintiff's individual claims benefit at all from *American Pipe* tolling, that tolling is restricted to the timing of the *Bowling* action. Only two of Plaintiff's causes of action—negligent misrepresentation (Count VI) and fraud (Count VII), which are both subject to a six-year statute of limitations—would have survived until the filing of Bowling's complaint in May 2017. Plaintiff's other causes of action are time-barred even if this Court were to apply *American Pipe* tolling based on the *Bowling* action. But given the history of this litigation and the equitable principles underlying *American Pipe*, the statute of limitations should not be tolled for *any* of Plaintiff's individual claims.

**C.**     **Plaintiff's Individual Claims Are Ineligible for Equitable Tolling**

*China Agritech* makes clear that Plaintiff's *class* claims are not subject to American Pipe tolling. But further, the equitable principles animating both *China Agritech* and *American Pipe* militate against tolling even Plaintiff's claims for *individual* relief. Class-action tolling is based in equitable principles, and "need not be applied mechanically" and especially not "where doing so would result in an abuse of *American Pipe*." *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604,

609 (3d Cir. 2018). In the particular circumstances surrounding this lawsuit, class-action tolling under *American Pipe* would permit exactly such an abuse, and this Court should decline to toll the applicable statutes of limitations.

Plaintiff's lawsuit is a story of his own unjustified delay, and his counsel's strategic exploitation of tolling principles that have now been repudiated by the Supreme Court in *China Agritech*. Swooping in after the *Reid* action settled, Plaintiff's counsel filed the *Martinelli* action. Anticipating that Martinelli's nationwide class claims would be stricken, Plaintiff's counsel tried to reconfigure the lawsuit to rope in as a new plaintiff Suzanna Bowling in New York through a second amended complaint. Through the addition of Bowling, Plaintiff's counsel sought to expand the scope of this litigation by seeking statutory damages under the General Business Law that, under Plaintiff's counsel's theory of relief (which McNeil disputes), would dwarf the actual damages calculated by their own expert. The Eastern District of California expressly rejected this maneuvering and found that Plaintiff's counsel "was not diligent in [their] efforts to identify and confirm the new representative."[24] Plaintiff's counsel then filed the *Bowling* action in a second attempt to cash in on New York's statutory damages. And after ***this same Court*** denied Bowling's motion for class certification, Plaintiff's counsel filed this lawsuit in defiance of the Court's denial of their request to substitute a new class representative.

The Supreme Court in *China Agritech* looked to whether tolling furthered the purposes of the federal class action rule. 138 S. Ct. at 1809. Here, tolling would frustrate New York's Civil Practice Law and Rules § 901(b), which bars statutory damages in state class actions. *See In re Scotts EZ Seed Litig.*, 2017 WL 3396433, at *5–7 (S.D.N.Y. Aug. 8, 2017) (acknowledging

---

[24] Mem. & Order, *Martinelli* ECF No. 78 at 11.

CPLR § 901(b) bars statutory damages under GBL §§ 349 and 350 in state class actions).[25] This Court should not use its equitable powers to apply a tolling rule that frustrates the careful legislative compromise that limits class action claims brought under GBL sections 349 and 350 to actual damages and does not allow statutory damages to be multiplied across a class. This aim would be especially frustrated in the case of *Bowling* and *Chamlin*, where the Plaintiff's counsel introduced statutory damages into the action precisely in order to seek a financial bonanza based on an erroneous interpretation of what statutory damages are available under New York law. In doing so, Plaintiff's counsel blew up the scale of this litigation by more than a factor of ten, such that it is unfair to toll Plaintiff's New York claims. *See Am. Pipe*, 414 U.S. at 555 (noting that tolling is fair to defendants when an earlier class action "ha[s] the essential information necessary to determine both the subject matter and size of the prospective litigation"). Thus, the filing of claims under California law in *Martinelli* should not toll the statute of limitations for claims based on New York law where the plaintiffs seek statutory damages that would dramatically increase McNeil's potential liability.

Adding to the inequity of tolling Plaintiff's claims is that McNeil removed the "No Trans Fat" language from Benecol labels months before Plaintiff alleges he bought it,[26] and that

---

[25] McNeil notes that some courts in this district have felt constrained by the Supreme Court's plurality decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), which held that a federal court sitting in diversity could award statutory damages under New York law notwithstanding the text of CPLR § 901(b). *See id.* at 409. Should Plaintiff's action survive this motion, McNeil will present arguments as to why this Court should not feel so constrained and indeed, that it would violate due process to award $343 million in damages based on $550 in statutory damages per tub of a vegetable oil spread that sold for $3.99.

[26] *Compare* Compl. ¶ 5, *with* Decl. of Elizabeth Steele, *Bowling* ECF No. 60 ¶ 20 ("No Trans Fat" statement removed from label in September 2011).

McNeil divested entirely from Benecol years ago.[27] The individuals who worked on this product, and who have knowledge about McNeil's conduct during the relevant time period, have moved on. Indeed, as the parties conducted discovery in *Martinelli*, it proved difficult to find witnesses who had worked on Benecol marketing for more than a few months, and the "No Trans Fat" language had been on Benecol's labels for years before the witnesses even worked on the brand.[28] This problem is made worse here by Plaintiff's added delay, as memories have faded still more. McNeil should not be made to defend a case that went stale years ago simply to enable Plaintiff's counsel to crusade for an illusory holy grail of statutory damages.

## V.    CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Class Action Complaint with prejudice, or in the alternative, strike Plaintiff's class allegations from the complaint.

Date:     September 24, 2019               Respectfully submitted,
          New York, New York

                                           */s/ Hannah Y. Chanoine*
                                           Hannah Y. Chanoine
                                           O'MELVENY & MYERS LLP
                                           Times Square Tower
                                           7 Times Square
                                           New York, NY, 10036
                                           Telephone: (212) 326-2000
                                           Facsimile: (212) 326-2061
                                           E-mail: hchanoine@omm.com

                                           Richard B. Goetz (*Pro Hac Vice* pending)
                                           Carlos M. Lazatin (*Pro Hac Vice* pending)
                                           O'MELVENY & MYERS LLP
                                           400 South Hope Street

---

[27] *See* Raisio, *Chief Executive's Review for 2014* (Feb. 12, 2015) (last visited Sept. 19, 2019), https://www.raisio.com/en/chief-executive-s-review-for-2014.

[28] Plaintiffs deposed Laura Zeno (on the brand from July of 2010 to March 2011), Sean Belke (on the brand for less than a year in 2011), William Twomey (on the brand from August 2009 to June 2010), Elizabeth Steele (on the brand from December 2008 until September 2013), and Jennifer Strouse (on the brand intermittently in 2011 and 2012). The "No Trans Fat" language had been on Benecol packaging since at least 2004.

Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
E-mail: rgoetz@omm.com
        clazatin@omm.com

*Counsel for Defendants Johnson & Johnson and McNeil Nutritionals, LLC*